UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

THANE PARTON,

Plaintiff,

v.

DAVOL, INC. and C.R. BARD, INC.,

Defendants.

Case No. 08cv2573 JMR/AJB

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff THANE PARTON, by and through his undersigned counsel, for causes of action against Defendants, Davol, Inc. and C.R. Bard, Inc. (hereinafter collectively referred to as "Defendants", or "DAVOL and BARD", unless otherwise stated), makes the following allegations based upon personal knowledge, and upon information and belief, as well as upon his attorneys' investigative efforts, and alleges as follows:

## PARTIES

1. Plaintiff, THANE PARTON ("Plaintiff") is a citizen and resident of the County of Clark, State of Nevada.

2. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

SCANNED
JUN 1 9 2008
U.S. DISTRICT COURT MPLS

3. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

## JURISDICTION AND VENUE

4. The venue and jurisdiction of this action is proper because DAVOL and BARD conducted business in the State of Minnesota through medical device sales representatives in the State of Minnesota. Further, DAVOL and BARD were engaged in testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, the Kugel Patch in the State of Minnesota. Thus, a sufficient nexus exists between Defendants' forum contacts and Plaintiff's claims to justify this venue and the assertion of jurisdiction in Minnesota.

## FACTUAL ALLEGATIONS

5. Defendant DAVOL designed, manufactured and distributed the Composix Kugel Patch, a hernia mesh patch that was inserted into Plaintiff's body.

6. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Composix Kugel Patch that was inserted into Plaintiff's body.

7. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Composix Kugel Patch was authorized by the FDA as a Class II medical device.

8. Immediately after the Kugel Patches were placed on the market, DAVOL and

BARD began receiving actual notices of memory ring failures and Kugel Patch defects. DAVOL and BARD actively and intentionally concealed this notice of the defective and dangerous condition associated with the Kugel Patches from Plaintiff, Plaintiff's physicians, and the general public.

9. After the defective and dangerous Kugel Patch was already placed on the market, Defendants DAVOL and BARD conducted physician screenings and reviews as early as 2002. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, BARD and DAVOL failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of the physician surveyors were actively concealed by DAVOL and BARD from Plaintiff, Plaintiff's surgeons, and the public at large.

10. On January 10, 2002, a Kugel Hernia Mesh Patch, 8 cm x 8 cm REF#0010203 and LOT# 43JLD176 was used to repair Plaintiff's hernia defect.

11. The Kugel Patch hernia repair product implanted in Plaintiff was designed, manufactured, sold and distributed by DAVOL (Surgical Sense. Inc. was acquired by Bard in 2000) to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

12. No later than September 2004, Defendants uncovered serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the plant, BARD and DAVOL found the corrective measures to be ineffective and the process still not in control. Defendants were aware these weld issues had existed from the time the Kugel

Patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld at this time from Plaintiff, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring.

13. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marketed increase in the number of complaints with the Kugel Patch and the memory recoil ring. In spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Kugel Patch distribution hold. DAVOL and BARD actively and intentionally chose not to immediately inform Plaintiff, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring. DAVOL and BARD waited until December 2005 to notify the public of the potential severity of the complications which were resulting from the dangerous and defective Kugel Patches and have since admitted that the product quality hold and release procedure was not applied on a timely basis.

14. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

15. On December 22, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice.

16. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

17. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that BARD and DAVOL:

i. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;
ii. misidentified numerous Kugel Patch complication events;
iii. failed to apply the product quality hold and release procedure on a timely basis;
iv. failed to properly follow the procedures for conducting design validation review;
v. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Kugel Patch sizes in the December 2005 recall;
vi. failed to provide full information which they knew regarding numerous Kugel Patch complaints;
vii. failed to actually perform strength testing on memory recoil rings for all sizes of Kugel Patch before putting them into the stream of commerce;
viii. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

18. On March 24, 2006, the initial Class I recall on the Composix Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

19. On January 10, 2007, the existing recall on the Composix Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product. The Composix Kugel Patch product codes recalled through this recall included 0010202, 0010204, 0010206, 0010207, 0010208, and 0010209.

20. Although not recalled, Davol's Composix Kugel Patch product codes 0010201, 0010203 and 0010205, include the "memory recoil ring". In addition, while Surgical Sense Inc.

product codes were established prior to Bard's acquisition of the company, the Kugel Hernia Patch was unchanged in it's design when assigned new product codes by Bard.

21. The FDA has received Medical Device Reports on problems with the "memory recoil ring" in Davol's Composix Kugel Patch product codes 0010201, 0010203 and 0010205. Additionally, at the time of Bard's acquisition of Surgical Sense Inc., the Kugel Hernia Patch included product codes listed as 10-101 which corresponds with Bard's 8 X 12 Kugel Hernia Patch product code 0010101.

22. Plaintiff was never informed by Defendants of the defective, dangerous, and recalled nature of the Kugel Patch and memory recoil ring which had been implanted until well after discovering Bard's and Davol's FDA recall of the product.

23. Neither Plaintiff nor Plaintiff's physicians were aware of the defective and dangerous condition of the Kugel Patch or that this unreasonably defective condition was the cause of Plaintiff's injuries until some time after BARD and DAVOL chose to finally inform the general public of the defective nature of the Kugel Patches and the subsequent recalls.

24. On September 20, 2002, Plaintiff was implanted with a second Composix Kugel Hernia Mesh Patch. The operative report identifies the product as "Bard Composix Kugel Hernia Patch REF # 0010203," 8 cm x 8 cm.

25. On June 13, 2004, Plaintiff had a CT scan because of sudden abdominal pain. The CT scan showed a midline abdominal hernia containing small bowel.

26. On June 25, 2004, Plaintiff underwent removal of the previously placed Kugel mesh. The operative report indicates that Plaintiff had adhesions of small bowel to the inner aspect of the Gore-Tex.

27. On September 12, 2006, Plaintiff was implanted with his third Composix Kugel

product, REF # 0010202, lot 43EQD377.

28. Plaintiff continued to experience abdominal pain and discomfort after his multiple hernia repairs.

29. Plaintiff has suffered and will continue to suffer physical pain and mental anguish.

30. Plaintiff has incurred substantial medical bills from his multiple hernia surgeries, and Plaintiff has suffered loss of other monies.

31. DAVOL and BARD withdrew a large number of Composix Kugel Patches as a result of the high complication and failure rate of the product.

32. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

33. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Composix Kugel Patch before it was recalled.

34. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

35. Upon information and belief, the complications and failures associated with the Composix Kugel Patches are not limited to the sizes which DAVOL and BARD has already recalled.

36. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design of the non-recalled Kugel Composix Patch sizes and chose not to issue a recall on all Kugel Composix Patches in the face of the high degree of complication and failure rates.

**FIRST CAUSE OF ACTION**
**[Negligence]**

37. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

38. DAVOL and BARD were negligent to Plaintiff in the following respects:

39. DAVOL and BARD, at all times mentioned, had a duty to properly manufacture, test, inspect , package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use of the Kugel Patch.

40. DAVOL and BARD, at all times mentioned, knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch's users.

41. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

42. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. Defendants knew or should have known the Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted in conscious disregard of the safety of Plaintiff.

43. Defendants DAVOL and BARD owed a duty to Plaintiff to adequately warn him

and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

44. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

45. As a direct and proximate result of the duties breached, the Kugel Patch used in Plaintiff's hernia repair surgery failed, resulting in Plaintiff suffering pain and harm.

46. As a direct and proximate result of DAVOL's and BARD's negligence, Plaintiff has suffered injuries and damages.

47. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## SECOND CAUSE OF ACTION
**[Strict Product Liability]**

48. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

49. DAVOL and BARD are strictly liable to Plaintiff in the following respects:

50. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

51. The Kugel Patches subject to the Class I recall were defective because they failed to perform safely and effectively for the purpose they were originally designed. While Plaintiff's first Kugel Hernia Patch was not included in the Class I recall, it is included in the same product line, in that it also contains the "memory recoil ring" as in the recalled products. The Plaintiff's device failed while in his body causing him to develop serious physical complications which required subsequent, painful and unnecessary surgery as a result of his Kugel Patch.

52. At all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

53. The Composix Kugel Patch implanted into Plaintiff was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

54. The Kugel Patches, like the one found in Plaintiff, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Plaintiff as follows:

i. The Kugel Patch was sold in a defective condition by design and manufacture;
ii. The Kugel Patch as designed and manufactured was unsafe to Plaintiff;
iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to Plaintiff;
iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Plaintiff, would expect;
v. The Kugel Patch as designed and manufactured was unsafe for its intended use;
vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

55. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## THIRD CAUSE OF ACTION
## [Negligent Infliction of Emotional Distress]

56. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

57. DAVOL and BARD are liable to Plaintiff for the negligent infliction of emotional distress in the following respect:

58. Plaintiff suffered severe emotional distress, which was as a result of Defendants' negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Composix Kugel Patch for hernia repair surgery.

59. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery.

60. Therefore, DAVOL and BARD are liable to Plaintiff.

61. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## FOURTH CAUSE OF ACTION
**[Intentional Infliction of Emotional Distress]**

62. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

63. DAVOL and BARD are liable to Plaintiff for the intentional infliction of emotional distress in the following respect:

64. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Kugel Patch for hernia repair surgery.

65. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Plaintiff.

66. Therefore, DAVOL and BARD are liable to Plaintiff.

67. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## FIFTH CAUSE OF ACTION
## [Breach of Implied Warranty]

68. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

69. DAVOL and BARD are liable to Plaintiff for their breach of implied warranty in

the following respect:

70. DAVOL and BARD sold the Kugel Patch which was implanted in Plaintiff. DAVOL and BARD impliedly warranted to Plaintiff, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which they were intended.

71. DAVOL and BARD knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

72. Plaintiff, his physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Kugel Patch was fit for such use.

73. When the Kugel Patches were distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

74. Plaintiff suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

**SIXTH CAUSE OF ACTION**
**[Breach of Express Warranty]**

75. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

76. DAVOL and BARD are liable to Plaintiff for their breach of express warranty in the following respect:

77. DAVOL and BARD's concealment and failure to warn through promotional statements and product literature expressly warranted to Plaintiff that their Kugel Patches were safe, capable of treating hernias, and highly reliable products in comparison to the conventional product line.

78. In response to these promises and express statements, Plaintiff and his physicians relied on such affirmations and warranties to Plaintiff through his physicians and surgeons.

79. The Kugel Patches do not conform to those express representations in light of recently discovered disclosures and information previously withheld by DAVOL and BARD. DAVOL and BARD's express warranty through their false statements failed to disclose and provide patient approval of the design and manufacturing defects inherent in the devices.

80. DAVOL and BARD breached their warranty of the mechanical soundness of their Kugel Patches by continuing sales and marketing campaigns highlighting the safety of their products, while they knew of the design and manufacturing defects and risk of product failure.

81. As a direct and proximate result of DAVOL and BARD's breach of their express warranty, Plaintiff suffered bodily and mental injury, harm, other compensable injury and economic losses, compensable through this Court.

**<u>SEVENTH CAUSE OF ACTION</u>**
**[Failure to Warn]**

82. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

83. DAVOL and BARD are liable to Plaintiff for failure to warn in the following respect:

84. In the course of business, DAVOL and BARD designed, manufactured and sold

the Kugel Patch to the hospital for hernia repair surgeries.

85. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Plaintiff received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

86. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

87. The dangerous and defective conditions in the Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Plaintiff had his hernia repair surgery the Kugel Patch was in the same condition as when manufactured, distributed and sold.

88. Plaintiff did not know at the time of use of the Kugel Patch, not at any time prior thereto, of the existence of the defects in the Patches.

89. Plaintiff suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

90. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not

performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**EIGHTH CAUSE OF ACTION**
**[Misrepresentation by Omission]**

91. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

92. DAVOL and BARD are liable to Plaintiff for misrepresentation by omission in the following respect:

93. DAVOL and BARD misrepresented the mechanical soundness and reliability of their Kugel Patch to physicians and the general public through promotional and marketing campaigns. They misrepresented that the Kugel Patch was safe and/or effective when used as instructed, when, in fact, Kugel Patch was dangerous to the health of patients. DAVOL and BARD continued these misrepresentations for an extended period of time, without disclosing material information.

94. DAVOL and BARD took advantage of the limited opportunity Plaintiff had to discover Defendants' strategic and intentional concealment of the design and manufacturing defects in their Kugel Patch.

95. At the time DAVOL and BARD promoted the Kugel Patch as safe and/or effective, Defendants did not have adequate proof upon which to base such representations, and in fact, knew or should have known that the Kugel Patch was dangerous.

96. DAVOL and BARD concealed these design and manufacturing defects from the public by withholding information pertaining to the inherent design and manufacturing defects

and high risks of failure relating to their Kugel Patch and presenting the devices as sound and reliable.

97. DAVOL and BARD's intentional misrepresentations and omissions were made willfully, wantonly or recklessly to the Plaintiff to induce purchase of Defendants' Kugel Patch over other devices on the market.

98. DAVOL and BARD knew or should have known of the high risk Plaintiff would encounter by unwittingly agreeing to have implanted one of DAVOL and BARD's defectively designed and manufactured devices.

99. DAVOL and BARD failed to exercise reasonable care and competence in obtaining and/or communicating information regarding the safe use of the Kugel Patch and otherwise failed to exercise reasonable care in transmitting information to Plaintiff, his physician, and the public in general.

100. DAVOL and BARD made the aforesaid representations in the course of their business as designers, manufacturers, and distributors of the Kugel Patch despite having no reasonable basis for their assertion that these representations were true and/or without having accurate or sufficient information concerning the aforesaid representations. DAVOL and BARD were aware that, without such information, they could not accurately make the aforesaid representations.

101. At the time the aforesaid representations were made, DAVOL and BARD intended to induce Plaintiff and/or his physicians to rely upon such representations.

102. Said representations were made with the intent to defraud and deceive Plaintiff and/or his physicians and with the intent to induce Plaintiff and/or his physicians to rely upon the statements and use the Kugel Patch.

103. Plaintiff and/or his physicians, at the time the representations were made, were unaware of their falsity and believed them to be true. In reasonable reliance thereon, Plaintiff and/or his physicians used the Kugel Patch, and as a result, Plaintiff has suffered, and will continue to suffer, injury, harm and economic loss alleged herein.

104. As a direct and proximate result of reliance upon DAVOL and BARD's misrepresentations, Plaintiff has suffered and will continue to suffer injury, harm, and economic loss as alleged herein, and expenses attributable to this injury.

**NINTH CAUSE OF ACTION**
**[Constructive Fraud]**

105. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

106. DAVOL and BARD are liable to Plaintiff for constructive fraud in the following respect:

107. DAVOL and BARD, while in possession of unique and pertinent information involving the safety and mechanical reliability of their Kugel Patch, presented their Kugel Patch as mechanically sound and failed to warn of their inherent design and manufacturing defects. DAVOL and BARD suppressed this information and continued sales and marketing of their products to the general public. Defendants knew or should have known Plaintiff had no means, other than their full, accurate, and objective disclosure, of obtaining the relevant information.

108. Through their unique knowledge and expertise regarding the affected nature of the Kugel Patch and through their statements to physicians and their patients in advertisement, promotional materials, and other communications, DAVOL and BARD professed and affirmed to Plaintiff their knowledge of the truth of the representation that Defendants' Kugel Patch was

safe for its intended use and was free from design and manufacturing defects.

109. DAVOL and BARD's misrepresentations and omissions were made intentionally to induce Plaintiff to purchase their Kugel Patch in order to reap the high profit margin relating to DAVOL and BARD's affected hernia family of products.

110. DAVOL and BARD's conduct took unconscionable advantage of their dominant position of knowledge, engaging in constructive fraud in their relationship with Plaintiff. Misled by this veil of fraud, Plaintiff reasonably relied on DAVOL and BARD's representations.

111. As a result, Plaintiff has suffered and will continue to suffer injury, harm, and economic loss as alleged herein, and expenses attributable to this injury.

## TENTH CAUSE OF ACTION
**[Fraud]**

112. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

113. DAVOL and BARD are liable to Plaintiff for fraud in the following respect:

114. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch for hernia repair surgeries.

115. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Plaintiff received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

116. BARD and DAVOL was aware of the dangerous and defective condition of the products and intentionally withheld this information from Plaintiff, Plaintiff's physicians, and the

general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

117. BARD and DAVOL fraudulently presented to Plaintiff, Plaintiff's physicians, and the general public that the Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Kugel could and would cause injuries such as those suffered by Plaintiff.

118. Plaintiff and Plaintiff's physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

119. As a direct and proximate result of Plaintiff's reliance on BARD's and DAVOL's fraudulent misrepresentations and concealments, Plaintiff was seriously and permanently injured.

120. The conduct of BARD and DAVOL in continuing to fraudulently market, promote, sell and distribute the Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**ELEVENTH CAUSE OF ACTION**
**(Violation of Nevada Consumer Protection Acts)**

121. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

122. Defendants have liability for the recalled devices for the reasons set forth in this Count.

123. DAVOL and BARD engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Nevada Deceptive Trade Practices

Act, N.R.S. §§ 598-0903, et seq., and the Nevada Unfair Trade Practices Act, N.R.S. § 598A.010, et seq. by failing to adequately warn consumers and the medical community of the safety risks associated with the Kugel Mesh Patch. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff suffered and will continue to suffer personal injury, economic loss, pecuniary loss, loss of companionship and society, mental anguish and other compensable injuries.

124. The actions and failure to act of DAVOL and BARD, including the false and misleading representations and omissions of material facts regarding the safety and potential risks of the devices and the above described course of fraudulent conduct and fraudulent concealment constitute acts, uses or employment by Defendants on unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts in connection with the sale of merchandise of Defendants in violation of the consumer protection statutes listed above.

125. The medical community relied upon Defendants' misrepresentations and omissions in determining which leads to utilize.

126. By reason of the unlawful acts engaged in by Defendants, Plaintiff suffered ascertainable loss and damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief, jointly and individually, against DAVOL and BARD as follows:

1. For judgment for damages sufficient to compensate for damages in excess of $75,000.00, including but not limited to past, present, and future economic expenditures in connection with Defendants' affected devices;

2. For compensatory damages according to proof;
3. For all applicable statutory remedies provided by law that assert liability for Defendants' wrongdoings and improper conduct;
4. For a disgorgement of profits;
5. For prejudgment interest, as permitted by law;
6. For reasonable costs, including attorney's fees as permitted by law; and
7. For all other just and proper relief.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

Dated: 6/19, 2008.

GOLDENBERG & JOHNSON, PLLC

By ______________________
Michael K. Johnson (#258696)
Lucia J. W. McLaren (#0388088)
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
(612) 333-4662
(612) 339-8168 FAX
mkjohnson@goldenberglaw.com
ljmclaren@goldenberglaw.com

AND

Michael Schmidt (TX ID# 00785361)
THE SCHMIDT FIRM LLP
2911 Turtle Creek Blvd.
Suite 1400
Dallas, Texas 75219
(214) 521-4898
(214) 521-9995 FAX
Schmidt@schmidtlaw.com

Attorneys for Plaintiff

ACKNOWLEDGMENT REQUIRED BY
MINN. STAT. SEC. 549.211, SUBD. 2

The undersigned hereby acknowledges that, pursuant to Minn. Stat. Sec. 549.211, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated: 6/19, 2008.

GOLDENBERG & JOHNSON, PLLC

By ______________________
Michael K. Johnson (#258696)
Lucia J. W. McLaren (#0388088)
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
(612) 333-4662
(612) 339-8168 FAX
mkjohnson@goldenberglaw.com
ljmclaren@goldenberglaw.com

AND

Michael Schmidt (TX ID# 00785361)
THE SCHMIDT FIRM LLP
2911 Turtle Creek Blvd.
Suite 1400
Dallas, Texas 75219
(214) 521-4898
(214) 521-9995 FAX
Schmidt@schmidtlaw.com

Attorneys for Plaintiff

Stuart L. Goldenberg*
Michael K. Johnson
Lucia J.W. McLaren

Legal Assistants
Sheri K. Gross
Jake R. Jagdfeld
Lauren B. Lee
Stacy A. Olson
Sally C. Shortridge

Law Clerk
Sene M. Binsfeld

GOLDENBERG & JOHNSON PLLC
ATTORNEYS AT LAW

Promoting Safety
Through Accountability

Administrative
Paula M. Verhunce
Lisa M. Wahoski

33 South Sixth Street
Suite 4530
Minneapolis, Minnesota 55402

**Telephone (612) 333-4662**
Facsimile (612) 339-8168
Toll Free (800) 279-6386
goldenberglaw.com

CR 23785

June 19, 2008

Clerk of the Court
U.S. District Court
District of Minnesota
300 South 4th Street
Minneapolis, MN 55415

RECEIVED
JUN 19 2008
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

RE: Thane Parton v. Davol, Inc. & C.R. Bard, Inc.
Our File No.: 11374

Dear Court Administrator:

Enclosed herewith for filing, please find the following documents:

1. Civil Cover Sheet;
2. Summons; and,
3. Complaint.

Enclosed is also our firm draft in the amount of **$350.00 representing the filing fee.**

If you have any questions or require additional information, please do not hesitate to contact our office.

Sincerely,

GOLDENBERG & JOHNSON, PLLC

Michael K. Johnson
Direct Dial # (612) 335-9961

MKJ/ljwm
Enc.
cc: Thane Parton *(w/ enclosures)*
Mike Schmidt *(w/ enclosures)*